Raymond L. ROBERTS, and Sherry L. Roberts, Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 420–85C.

United States Claims Court.

Dec. 3, 1987.

Brian J. Coyne, Olympia, Wash., for plaintiffs; Miles, Way, Coyne & Humphrey, of counsel.

Michael T. Paul, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant; David M. Cohen, Director, and Thomas W. Petersen, Asst. Director, of counsel.

## OPINION

NAPIER, Judge:

This case is before the Court on defendant's motion for summary judgment. Plaintiffs' complaint seeks recovery for the breach of an implied-in-fact contract that plaintiffs allege existed between the parties to this action. Their complaint states that the contract breach caused damages of approximately $5 million. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1491(a)(1).

The relevant facts of the case have been set forth by the parties in their pleadings. No material facts are in dispute. After careful review of those facts, the parties' accompanying arguments, and the relevant case law, the Court concludes that defendant's motion should be granted and that plaintiffs' complaint should be dismissed.

## FACTS

At the time the claim arose, on or around August 20, 1980, plaintiffs, together as husband and wife, operated a dairy farm in Montesano, Grays Harbor County, Washington. A year earlier, in 1979, plaintiffs had attempted to secure a loan from the Farmers Home Administration (FmHA), to enable them to make home and farm improvements.

Plaintiffs wanted to increase the profitability of their farming operation by purchasing adjoining farm land (the Poppe farm) and additional dairy cattle. Plaintiffs believed that they could double their income without significantly increasing their expenses.

In their Complaint dated July 22, 1985, plaintiffs allege that on May 21, 1979, they went to the FmHA to obtain a loan amounting to $40,000 for a downpayment for the purchase of the Poppe farm, and $150,000 for the purchase of one hundred dairy cows.

Defendant acknowledges that FmHA officials had been informed of plaintiffs' objectives at that time. The validity of the $40,000 loan which plaintiffs obtained is not in dispute in this case. Regarding the $150,000, the parties agree that there was never an express written or oral contract between them committing FmHA to make a loan of that amount. It is agreed that the loan procedures set forth in applicable federal regulations were not followed, in that plaintiffs did not file a formal loan application, FmHA Form 410–1, nor was a County Committee Certification or Recommendation obtained (FmHA Form 440–2) pursuant to the applicable regulations. *See* 7 C.F.R. § 1945.111 (1979); 7 C.F.R. § 1945.150 Exhibit A (1979). The regulations state in pertinent part, respectively, "[a]pplications will be received and processed in accordance with Subpart A of Part 1910 of this Chapter. Form FmHA 410–1, 'Application for FmHA Services,' will be used for this purpose," and "[f]orms

designated with an 'x' are required [Form No. 410–1]." *Id.*

It is not disputed, for purposes of this motion, that there was a 'meeting of the minds' between the parties regarding the loan, which plaintiffs allege constituted an implied-in-fact contract. Plaintiffs believed that there was sufficient authority to enable the FmHA official to grant the loan, pursuant to FmHA Instruction 1901–A, which authorizes a county supervisor to issue Economic Emergency Loans (EE Loan) for amounts up to $350,000. Plaintiffs assert that consideration for the alleged loan existed in the form of their detrimental reliance on the supposedly forthcoming funds of $150,000; they claim that they would not have borrowed the initial $40,000 had they known they would be unable to secure the $150,000. Nor, they contend, would they have signed promissory notes, pledged collateral, entered into real estate contracts (the Poppe farm), and executed other legal documents.

Defendant counters that the government cannot be held accountable to an implied-in-fact contract in the instant case because the county FmHA official did not have the authority to bind the government until the requirements of the loan application procedure were met and triggered the county officials' authority. Plaintiffs never completed and signed an application, both of which are required by the regulations.

Upon purchasing the Poppe farm, plaintiffs allege that they learned they would be unable to obtain a loan from the FmHA for $150,000, because they had not met the requirements of completing the application. They made frequent pleas to the FmHA for either the one hundred cattle or the necessary funds to purchase them. Their appeals were unsuccessful. Subsequently, plaintiffs were forced to file for bankruptcy. Plaintiffs seek damages in the amount of $5 million, consisting of property losses and emotional distress.

## DISCUSSION

In their various pretrial submissions, plaintiffs make both a legal and an equitable argument for relief. Historically, both contracts implied-in-fact and the doctrine of equitable estoppel evolved from the courts' and legislature's desire to alleviate the harsh consequences that resulted when an otherwise valid agreement between two parties was not, in fact, consummated by a written signature of the party to be charged.

The parties are in agreement that the facts of the case do not support the existence of an express contract. For such a contract to be given legal effect, the basic elements of a contract must have been established between the parties and expressly agreed to, as evidenced by the written signature of an authorized FmHA official. *See City of Alexandria v. United States,* 737 F.2d 1022, 1027 (Fed.Cir.1984); *Schlesinger v. United States,* 182 Ct.Cl. 571, 390 F.2d 702, 703 (1968), *citing Shipyard Constr. & Trading Co. v. United States,* 91 Ct.Cl. 419, 456 (1940), *cert. denied,* 312 U.S. 699, 61 S.Ct. 737, 85 L.Ed. 1133 (1941). Here, plaintiff does not dispute the lack of a written signature by an authorized FmHA official.

■ While an implied-in-fact contract does not require that the party to be charged expressly consent to the terms of the 'contract,' "the officials of the United States whose acts might bind it, must have authority to do so, just as the case is with an express contract." *City of Alexandria,* 737 F.2d at 1027, *citing Grismac Corp. v. United States,* 214 Ct.Cl. 39, 556 F.2d 494 (1977).

■ Accordingly, the parties have properly defined the legal issue to be whether the FmHA officials purporting to contractually bind the government to an EE Loan of $150,000 had authority to do so through informal discussions with and general assurances to plaintiffs, and thereby obligate appropriated funds.

In this regard, plaintiffs essentially contend that because of the nature of an implied-in-fact contract, the question of authority does not turn on whether the express application procedures for the loan, as set forth in federal regulations, were followed. Plaintiffs argue that nothing in

the FmHA procedures mandate that it is a prerequisite to authority to grant a loan that the formal application process must have been initiated or even completed. Yet, in their argument that the FmHA officials had the requisite authority to make a loan regardless of whether the regulations had been followed, plaintiffs explicitly rely on the regulatory scheme which generally permits an FmHA county official to make an EE Loan for $150,000. Plaintiffs cannot have it both ways. Implicit in an acceptance of the general scheme of loan authority set forth in the regulations is an acceptance of the procedures which are outlined for the proper implementation and administration of the loan program.

Just as "[m]en must turn square corners when they deal with the Government," *Rock Island, Arkansas & La. R.R. v. United States*, 254 U.S. 141, 143, 41 S.Ct. 55, 56, 65 L.Ed. 188 (1920), so must government officials 'walk around the same block' when acting on the government's behalf. Federal regulations enacted by the Congress are given the force and effect of law, *see Montilla v. United States*, 198 Ct.Cl. 48, 63, 457 F.2d 978, 986 (1972), and an "agent of the government [*does*] *not have the authority* nor the power to nullify [or waive] the regulations by his actions and statements...." *Id.* (emphasis added.)

The FmHA county officials would have possessed the authority to approve an EE Loan for $150,000 if plaintiffs had followed the necessary regulatory requirements. However, plaintiffs did not file FmHA Form 410–1, the formal loan application, as required in 7 C.F.R. § 1945.111 (1979), and 7 C.F.R. § 1945.150 Exhibit A (1979).

In *Wertz v. United States*, 2 Cl.Ct. 45 (1983), the plaintiff sought to establish the existence of an implied-in-fact contract with the Small Business Administration (SBA). In her assertion, plaintiff relied in part on a course of conduct by certain SBA officials to prove the contract. She contended that the enthusiasm of SBA personnel, status reports, and conversations between the parties indicating that plaintiff had made her goals and objectives known to the SBA, were sufficient to effect a contract between her and the SBA. SBA officials had informed her that they were not authorized to sign a contract. The case at bar is distinguishable on this point, since plaintiffs here were not told by FmHA officials that they (the officials) only had authority to make a loan in strict accordance with federal regulations, i.e., in strict compliance with the formal application process. However, the court in *Wertz* went on to hold that the plaintiff's misunderstanding of and noncompliance with SBA's internal contracting procedures "cannot ... amend the review and approval requirements of SBA's internal [contracting] procedures." *Id.* at 52.

The court's decision in *Wertz* essentially rephrases the decision of the landmark case *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947). In that case, plaintiff, a wheat farmer, had suffered disastrous economic consequences when he reasonably relied on government officials' mistaken misinterpretation of wheat crop insurance regulations. The Supreme Court imposed an affirmative duty on the general public to inform and educate themselves regarding that which they undertake to deal with the government: "Having been published in the Federal Register, the Wheat Crop Insurance Regulations are binding on all who seek to come within the Federal Crop Insurance Act, regardless of lack of actual knowledge of the regulations." *Id.* at 381, 68 S.Ct. at 2.

The Supreme Court in *Merrill* did not distinguish, as plaintiffs would have this Court do, between the application of regulations allowing an official to issue insurance or a loan for a specific dollar amount, and regulations which set forth specific insurance or loan application procedures. No doubt, the Court considered *all* federal regulations to be equally binding on both parties, regardless of how insignificant or formalistic they may seem. Indeed, as envisioned by the Court of Claims in *Montilla*, "[one] can well imagine the chaos that would result if the thousands of [loan officials] could by their actions and conduct make null and void the provisions of laws

duly passed to govern those in the [FmHA]." *Montilla*, 457 F.2d at 986.

While the FmHA loan officials here were arguably negligent in making encouraging assurances to plaintiffs, and, moreover, in failing to require plaintiffs to fill out and submit the necessary loan forms, if this Court were to recognize an implied-in-fact contract in this case, the effects would be to (1) alter Congress' attempts to establish uniform and fair loan procedures, (2) encourage government officials across the land to ignore federal law as they see fit, and thereby (3) deprive future loan applicants, as well as budget analysts and policymakers, of certainty and regularity in the FmHA loan process.

It is the courts' duty to follow the law, not make new law because of sympathy with plaintiffs' plight arising from the factual situation at bar. Plaintiffs have not challenged the merits of the formal application and approval procedure, nor the underlying rationale which makes such a procedure necessary. As the Claims Court stated in *Clark Mechanical Contractors v. United States*, 12 Cl.Ct. 415, 416 (1987), "this court was neither elected to make laws nor appointed to set or develop [loan] policy."

Plaintiffs have, however, assuming for purposes of the case that the regulations are legally valid, pleaded in the alternative, for equitable estoppel.

■ Just as official authority is a requirement for a finding of an implied-in-fact contract, "it is essential to a holding of estoppel against the United States that the course of conduct or representations be made by officers or agents of the United States who are acting within the scope of their authority." *Emeco Industries, Inc. v. United States*, 202 Ct.Cl. 1006, 1015, 485 F.2d 652, 657 (1973), *citing United States v. Georgia–Pacific Co.*, 421 F.2d 92, 100–01 (9th Cir.1970); *Manloading & Management Assoc. v. United States*, 198 Ct.Cl. 628, 634–35, 461 F.2d 1299, 1302–03 (1972); *see also Montilla*, 457 F.2d at 986.

Courts have consistently required the satisfaction of four additional factors before granting equitable estoppel: (1) "[t]he party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter [the party raising estoppel] must be ignorant of the true facts; and (4) he [the party raising estoppel] must rely on the former's conduct to his injury." *Georgia–Pacific*, 421 F.2d at 96; *see Brechan Enter. v. United States*, 12 Cl.Ct. 545, 549 (1987); *Northern Indian Hous. and Dev. Council v. United States*, 12 Cl.Ct. 417, 424 (1987); *First Nat'l. Bank v. United States*, 6 Cl.Ct. 241, 244 (1984); *Russell Corp. v. United States*, 210 Ct.Cl. 596, 612–13, 537 F.2d 474, 484 (1976), *cert. denied*, 429 U.S. 1073, 97 S.Ct. 811, 50 L.Ed.2d 791 (1977).

■ Although at first glance it appears that the facts may satisfy the above four requirements, the controlling issue of authority again must be addressed. A government official's 'authority' comes into play regarding equitable estoppel in the same manner it does for express and implied contracts. No court has yet held to the contrary, nor does this Court today feel compelled, even by an argument in the equitable sense, to so rule. Plaintiffs have not established that the FmHA loan officials had the requisite authority to waive loan application regulations, and thus, the equitable estoppel argument must also fail.

## CONCLUSION

Because the record indicates that there are no genuine issues as to any material fact, and since the facts, as considered in a light most favorable to plaintiffs, entitle the defendant to judgment as a matter of law, defendant's motion for summary judgment is granted. Accordingly, the Clerk of the Court is directed to dismiss the complaint. No costs.