510

Terrance and Mary NELSON, Husband
and Wife, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 361–85C.

United States Claims Court.

March 17, 1989.

Terrance Nelson and Mary Nelson, Yu-
tan, Neb., pro se.

Martha H. DeGraff, with whom was
Asst. Atty. Gen. John R. Bolton, Washing-
ton, D.C., for defendant.

OPINION

HORN, Judge.

Plaintiffs, Terrance and Mary Nelson,
claim $2,750,150.00 in damages from the
defendant, due to alleged improper acts of
unspecified representatives of the Farmers
Home Administration in failing to complete
or consummate an emergency loan agree-
ment with the plaintiffs.

The plaintiffs originally filed this action
in the United States District Court for the
District of Nebraska. On April 9, 1985,
pursuant to a "Stipulation for Transfer and
Order," the case was transferred to this
court. Subsequently, plaintiffs filed an
amended complaint in this court on July 1,
1985.

Following the reassignment of the case
from Judge Judith Yannello of the United
States Claims Court to the present judge
on April 16, 1987, this court has granted
numerous extensions of time to both par-
ties due to representation problems encoun-
tered by plaintiffs, who now appear *pro se.*
At this time, having afforded plaintiffs ev-
ery opportunity possible to perfect their
claim and to properly assert their allega-
tions against the defendant, the court finds
that the defendant's Motion to Dismiss
should be GRANTED, with prejudice.

*Background*

The plaintiffs first filed a complaint in
the United States District Court for the
District of Nebraska on February 19, 1985,
praying for damages in the amount of
$2,750,150.00, plus attorney's fees and

costs.[1] The defendant filed a Motion to Dismiss in the District Court on March 3, 1985, for lack of subject matter jurisdiction. On April 9, 1985, the parties entered into a "Stipulation for Transfer and Order." In the stipulation the parties agreed that the district court lacked subject matter jurisdiction and that the matter should be transferred to the United States Claims Court. Following entry of the stipulation, which was approved by the presiding district court judge, the case was transferred to this court on June 17, 1985. The parties subsequently amended the complaint and filed with this court on July 1, 1985.

Based upon the plaintiffs' original complaint filed with the United States District Court and the amended complaint filed in this court, it appears that some time during the winter of 1980–1981, the plaintiffs applied for an Emergency Loan in the amount of $149,960.00 from the defendant, through the Farmers Home Administration ("FmHA"). The plaintiffs claim that the loan was fully processed and approved by the FmHA and that the funds were allocated by that agency to be paid to the plaintiffs. The plaintiffs further allege in their amended complaint that "the defendant refused and neglected to consummate the subject loan transaction with Plaintiffs and deliver such funds in Defendant's possession to Plaintiffs, in derogation of its agreement and duty to so do." Finally, plaintiffs assert that, as a result of the defendant's actions or omissions, they were compelled to institute Chapter 13 bankruptcy proceedings, which were then followed by Chapter 7 proceedings. *See* 11 U.S.C. §§ 1301–1330, 701–766 (1982). These proceedings allegedly resulted in the loss of their home and business (farming), as well as irreparable injury to their reputations. For these reasons plaintiffs instituted the case at bar.

On September 30, 1985, following the granting of defendant's uncontested motion for enlargement of time, the defendant filed a "Motion to Dismiss for Lack of Jurisdiction." Plaintiffs responded with a "Brief in Resistance to Defendant's Motion to Dismiss," filed on October 28, 1985. Following the court's approval of an unopposed motion for enlargement of time on November 8, 1985, the defendant's reply was filed on November 26, 1985. No further action in this case occurred until April 16, 1987, when this case was reassigned to the present judge.

On September 30, 1987, a scheduling order was issued and oral argument was scheduled for October 20, 1987, to hear arguments on the pending Motion to Dismiss. On October 8, 1987, the original deadline for the parties to inform the court whether they wished to present oral argument on the Motion to Dismiss, the defendant filed a status report notifying the court that the plaintiffs' attorney had died. The defendant's attorney indicated that he had contacted the office of plaintiffs' attorney, John D. Sykora of Omaha, Nebraska, but was informed that Mr. Sykora had passed away and that he should contact the executor in charge of Mr. Sykora's outstanding business affairs. After a conversation with the executor, the defendant's attorney concluded that the executor would not be handling the case, but that he would attempt to contact the plaintiffs to advise them of the need to either obtain new legal representation in this action or to represent themselves before this court. Consequently, the defendant, requested that the oral argument, scheduled for October 20, 1987, be cancelled.

The court issued an order on October 14, 1987, postponing the oral argument, pending the plaintiffs' notification to the court of substitution of counsel. By that same order, dated October 14, 1987, the plaintiffs were directed to inform the court of the status of their legal representation, on or before December 14, 1987. On October 14, 1987, the court also sent a letter to the plaintiffs at their home address[2] outlining

---

1. The original complaint filed in the district court is essentially the same as the amended complaint filed in this court, with the exception

of paragraph 3, which outlines this court's jurisdictional basis to hear and decide the case.

2. Subsequent to the October 14, 1987 mailing by the court to the plaintiffs, Terrance and Mary

the posture of the case and the court's requirement for substitution of counsel, under the Rules of the United States Claims Court. *See* RUSCC 81(d)(6) and (7), 28 U.S.C. (Supp. IV 1986). To fully explain the significance of representation by competent counsel, the court attached a copy of Rule 81 for plaintiffs' reference.

On January 26, 1988, having received no reply to the October correspondence, the court obtained a phone number for the plaintiffs. In a telephone call with the Judge's law clerk, plaintiff, Terrance Nelson, claimed that he had never received a copy of the October order or letter.

The court issued an order on February 1, 1988, rescheduling the oral argument for March 10, 1988. The order allowed plaintiffs to be represented individually or together, or to represent themselves *pro se.* Additionally, because the court had not received a response to the October 14, 1987 order or letter, the court sent letters to Terrance Nelson and Mary Nelson on February 1, 1988, again requesting to be informed as to their intentions with respect to representation in the case. The plaintiffs responded in a letter received by the court on March 7, 1988. The plaintiffs' letter detailed their difficulty in finding a new attorney and requested additional time to obtain counsel. A copy of plaintiffs' letter was forwarded by the court to the defendant's counsel the same day.

A status conference was held on March 10, 1988, in lieu of the oral argument originally scheduled for that date. In accordance with discussions at the status conference, an order was filed on March 11, 1988, requiring the plaintiffs to file monthly status reports, beginning April 11 and ending 90 days thereafter, indicating their progress in attempting to retain new legal representation before this court. The order allowed the plaintiffs until June 13, 1988, to make a final decision and to submit a status report, either naming substitute counsel or stating their intent to proceed

*pro se.* In addition, this final status report was to contain a proposed schedule for disposing of the defendant's Motion to Dismiss.

The plaintiffs' April status report, filed late, on April 13, 1988, by leave of the court, indicated their continuing inability to secure legal counsel and their interest in continuing to try to obtain representation. Plaintiffs failed to file the May 11, 1988 and June 13, 1988 court-ordered status reports. Accordingly, the court issued a scheduling order on July 27, 1988, setting oral argument for August 4, 1988, and allowing plaintiffs to appear, *pro se,* by telephone if they had not yet retained substitute counsel.

The oral argument on defendant's Motion to Dismiss was finally held on August 11, 1988.[3] Plaintiffs, now *pro se,* appeared by telephone. During the argument, it was brought to the court's attention that plaintiffs had been unable to locate portions of the case file and accompanying materials which had been missing since the death of their attorney. In an effort to assist the *pro se* plaintiffs, the court requested that defendant submit copies of all agency files and documents relating to this matter to plaintiffs and to the court. Pursuant to the court's request, on August 12, 1988, defendant submitted a copy of the April 7, 1981 letter written to plaintiffs by the Farmers Home Administration and, subsequently, on September 16, 1988, defendant submitted all additional agency documents.

At this time, the court has determined that the plaintiffs have had every opportunity to meet the jurisdictional requirements of this court. Should plaintiffs have decided to refile a properly drafted complaint or to supplement their arguments, they could have done so prior to the issuance of this opinion. For the reasons discussed below, the court, therefore, finds that it is compelled to grant defendant's Motion to Dismiss and dismiss the plaintiffs' amended complaint, with prejudice.

Nelson, all further correspondence with the Nelsons and service of all further orders of the court have been sent to the Nelsons at their home address.

3. By order, dated August 3, 1988, the court rescheduled the argument from August 4, 1988 to August 11, 1988.

*Discussion*

The purpose of Rule 12(b) of the Rules of the United States Claims Court, RUSCC 12(b), 28 U.S.C. (Supp. IV 1986), is to promote the expeditious presentation of defenses and objections. The defendant, following its receipt of the complaint and prior to its responsive pleading, has the option of presenting to the court in the form of a motion any of the four enumerated defenses in RUSCC 12(b).

> (b) *How Presented* .... [T]he following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) insufficiency of process, (4) failure to state a claim upon which relief can be granted. A motion making any of these defenses shall be made before pleading if a further pleading is permitted.

RUSCC 12(b), 28 U.S.C. (Supp. IV 1986).

RUSCC 12(b)(1), the defense upon which defendant in the instant case has moved the court, addresses itself solely to whether the subject matter of plaintiffs' claims presents an issue for which this court has jurisdiction to render a decision.

> When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the fact of the pleadings that a recovery is very remote and unlikely but that is not the test. Moreover, it is well established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader.

*Scheuer v. Rhoades,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1973). The court, therefore, is limited to deciding the defendant's motion to dismiss within the context of the well established principle that the allegations of fact outlined in the complaint be accepted and construed in a light most favorable to the plaintiff. *White Mountain Apache Tribe v. United States,* 8 Cl.Ct. 677, 681 (1985). The United States Supreme Court has stated that, when reviewing a motion to dismiss on the pleadings, the court must accept the allegations in the complaint and supporting affidavits, if any, as true. *Toilet Goods Assn. v. Gardner,* 387 U.S. 158, 172, 87 S.Ct. 1520, 1529, 18 L.Ed.2d 697 (1967).

With these general principles in mind, the court, finds that it cannot favorably interpret the plaintiffs' pleadings in such a manner as to entitle plaintiffs to proceed. The Motion to Dismiss is granted.

In their amended complaint, plaintiffs allege that this court has jurisdiction over this matter pursuant to the "Farmers' [sic] Home Administration Act of 1946 as amended August 14, 1946 c. 964, 60 Stat. 1062 and Title 7 U.S.C.A. § 1981 *et seq.*" Defendant's Motion to Dismiss asserts that the court lacks jurisdiction to consider the substance of the plaintiff's claims because plaintiffs failed to cite a money mandating statute as a basis for their complaint. *See Alexander v. United States,* 5 Cl.Ct. 57, 60–61 (1984).

The jurisdiction of this court to render judgments against the United States is derived from the Tucker Act, ch. 359, § 1, 24 Stat. 505 (1887) (codified as amended at 28 U.S.C. § 1491 (1982)). Section 1491(a)(1) states in relevant part:

> The United States Claims Court shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

*Id.* The Tucker Act confers jurisdiction whenever a separate substantive right exists entitling a party to money damages against the United States. However, the Tucker Act does not in and of itself create any such substantive rights. *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976); *United*

*States v. Mitchell,* 463 U.S. 206, 216, 103 S.Ct. 2961, 2967, 77 L.Ed.2d 580 (1983). A claim for damages must be based upon a violation of a law set forth in the constitution, a statute or regulation or of violation of contractual rights which can be fairly interpreted as mandating the payment of compensation from the Federal Government. *United States v. Testan,* 424 U.S. at 400, 96 S.Ct. at 954; *Eastport Steamship Corp. v. United States,* 372 F.2d 1002, 1007–09, 178 Ct.Cl. 599, 605–07 (1967). *See also, United States v. Connolly,* 716 F.2d 882, 885 (Fed.Cir.1983), *cert. denied,* 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984).

■ In the case at bar, plaintiffs have failed to show proper grounds for jurisdiction. The Farmer's Home Administration Act of 1946, c. 964, 60 Stat. 1062, may form the basis for jurisdiction within this court. It is not, however, either a money mandating statute, regulation or contractual provision, as required by 28 U.S.C. § 1491 (1982), and necessary to allow this court to exercise jurisdiction. In the case at bar, plaintiffs' claim, does not assert any valid authority to mandate compensation by the federal government. The statutes cited in the amended complaint are merely statutory guidelines governing the Emergency Loan program and do not specifically give rise to a money damage claim. 7 U.S.C. §§ 1961–1964 (1982).[4]

In papers filed with the court, plaintiffs assert several further alternative bases for the court to retain jurisdiction over this matter: a contract claim, a due process claim and a general claim under other applicable laws of the United States. First, the plaintiffs argue that they had entered into a binding express contract with the FmHA for a loan totaling $149,960.00. Plaintiffs, citing *Train v. City of New York,* 420 U.S. 35, 95 S.Ct. 839, 43 L.Ed.2d 1 (1975), claim that a contract was formed when they met the necessary statutory qualifications, and their application was accepted by the agency. Plaintiffs claim that upon acceptance of the application, the agency lost its discretion to deny the loan, and was required to release the funds to the plaintiffs. In support of these contentions, the plaintiffs rely on an FmHA letter which was sent to the plaintiffs on April 7, 1981. Plaintiffs claim that this letter indicates loan approval and contractual commitment on the part of the defendant. Defendant argues, however, that mere acceptance of a loan application satisfying requirements of the Farmers Home Administration Act of 1946 does not amount to a binding contract with the agency. Specifically, the defendant argues that the April 7, 1981 letter was an approval, subject to applicable statutory and regulatory conditions, as well as to specific conditions listed in the letter and that *Train v. City of New York,* does not apply to the instant case.

It would appear that plaintiffs' reliance on *Train* is misplaced. The statute at issue in *Train* specifies that approval by the Administrator of the Environmental Protection Agency "shall be deemed a contractual obligation of the United States for payment of its proportional contribution to such project." *Id.* at 39, 95 S.Ct. at 842. The statutes at issue in this case do not appear to create the same type of statutory obligation; nor was the loan at issue in this case approved by a senior official of comparable level, such as the head of the FmHA or the Secretary of Agriculture.

Paragraph 6 of plaintiffs' complaint states "that the defendant refused and neglected to consummate the subject loan transaction with plaintiffs and deliver such funds in defendant's possession to plaintiffs, in derogation of its agreement and duty to do so." In and of itself this paragraph in plaintiffs' complaint indicates that the loan transaction remained unconsum-

---

4. The complaint erroneously refers to "Title 7 U.S.C.A. Section 1981 *et seq.*" which is a subchapter of chapter 50 of Title VI entitled "Administrative Provisions." Plaintiffs' analysis is based on 7 U.S.C. §§ 1961–1964 (1982) which refers to loan eligibility requirements which all emergency loan applicants must satisfy before receiving the requested government assistance. The court notes, however, that even if the plaintiffs had, in fact, chosen to predicate this action on "[t]itle 7 U.S.C.A. Section 1981 *et seq,*" then the absence of a money mandatory statute would still prevent this court from exercising jurisdiction in this matter as prescribed.

mated. Moreover, nowhere in the complaint is there any further explanation of the word "agreement" and no indication that the alleged "agreement" rose to the level of a binding contractual obligation. At the various status conferences and at the oral argument, reference was made to the April 7, 1981 letter from FmHA to the plaintiffs, with a copy to the Bank of Freemont, as the document which demonstrated the existence of a contractual relationship between the parties.[5] On its face, the April 7, 1981 letter, however, represents only an approval in principal, prior to closing and subject to conditions clearly stated in the letter. From this document, the court cannot deduce a binding contract. Although it may be correct that an FmHA county supervisor might have authority to make a binding representation concerning the disbursement of a joint participation loan made by a federal land bank to a farmer, when the FmHA has made a complementary loan to a farmer, *See National Bank of South Carolina v. United States,* 621 F.2d 1109, 223 Ct.Cl. 573, 577–78 (1980), no such binding representation appears to be alleged or documented in this case. From the letter of April 7, 1981 it is quite clear that plaintiffs' prospects for obtaining a loan remained conditioned upon future performance of specific requirements listed in the letter and yet unmet.

Plaintiffs also claim another ground for jurisdiction that when the loan was allegedly approved, they were vested with a property right to which due process rights adhere. To succeed on this claim, plaintiffs would have to show that the loan was in fact approved and that a contractual right had resulted. As discussed above, it is clear that plaintiffs are unable to satisfy their burden of documenting the existence of a contract upon which this court could base such jurisdiction to grant relief.

■ In addition to the more specific allegation of a violation of the Farmer's Home Administration Act of 1946 in the complaint, the plaintiffs also assert a general claim under any other applicable laws of the United States.[6] Hence, the defendant, in its motion to dismiss, challenges the viability of any claims the plaintiffs might assert pursuant to the Federal Tort Claims Act, codified as amended, at 28 U.S.C. §§ 2671–2680 (1982). The United States Claims Court, however, has no general jurisdiction over claims sounding in tort. 28 U.S.C. § 1491. *See Tuepker v. Farmers Home Administration,* 538 F.Supp. 375, 377 (W.D.Mo.1982), *aff'd.,* 708 F.2d 1329 (8th Cir.1983). Therefore, any general claim sounding in tort which the plaintiffs may have wished to assert is now before the wrong federal court.

■ Furthermore, any argument that this court has jurisdiction over this action because the action was filed in this court in accordance with a stipulation of transfer from a district court would be misplaced. A stipulation of transfer from a district court does not vest subject matter jurisdiction in this court. Congress alone has the power to confer jurisdiction on a federal court. No action of the parties or of a court can confer subject matter jurisdiction upon a federal court where such jurisdiction does not affirmatively appear in the record. *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed. 2d 492 (1982) (quoting *Mansfield C & L M.R. Co. v. Swan,* 111 U.S. 379, 382, 4 S.Ct. 510, 511, 28 L.Ed. 462 (1884)).

■ As one final point, the court notes that the plaintiffs' request for relief in the amount of $2,750,150.00 as compensation for the alleged breach of a contract allegedly stemming from a loan in the amount of $149,960.00, is also a request beyond this court's power to grant. The United

---

**5.** The April 7, 1981 letter was formally submitted to the court on August 12, 1988 by the defendant.

**6.** The Rules of the United States Claims Court require that specific information be included in pleadings. With respect to the case at bar,

RUSCC 9, 28 U.S.C. (Supp. IV 1986), dictates that an accurate description of the contract upon which the plaintiffs claim relief be included in the complaint. RUSCC 9(h)(3), 28 U.S.C. (Supp. IV 1986). Plaintiffs have failed to satisfy this requirement in their amended complaint.

States Claims Court can only award actual damages in a common-law breach of contract suit against the United States, *Northern Helex Co v. United States*, 524 F.2d 707, 714–15, 207 Ct.Cl. 862, 886–87 (1975), *cert. denied*, 429 U.S. 866, 97 S.Ct. 176, 50 L.Ed.2d 146 (1976). The plaintiffs' claim, if cognizable, is one for consequential damages to their property and business, as an alleged result of the defendant's asserted failure to consummate the alleged loan agreement with the plaintiffs. *See William Green Const. Co. v. United States*, 477 F.2d 930, 936–37, 201 Ct.Cl. 616, 626–27 (1973), *cert. denied*, 417 U.S. 909, 94 S.Ct. 2606, 41 L.Ed.2d 213 (1974). It would appear that the most probable actual damages suffered by an unsuccessful borrower would be the difference in interest charges the plaintiffs had to pay to an alternative lender, other than the defendant, and the interest charges they would have had to pay to the defendant, if the alleged agreement had been consumated. Unfortunately, for plaintiffs' position, one of the conditions to qualify for the Emergency Loan program in question is a borrower's inability to qualify for a loan from any alternative lending source other than the defendant. *See* 7 C.F.R. § 1945.56(a) (1981). Since the requirements for the loan program include the borrower's inability to obtain credit in the market place, it appears that defendant correctly concludes that the plaintiffs do not have a viable claim for actual damages and their attempt to obtain consequential damages resulting from their bankruptcy or loss of their business in a common-law contract suit against the United States, is improper. *Ramsey v. United States*, 101 F.Supp. 353, 357–58, 121 Ct.Cl. 426, 433–35 (1951), *cert. denied*, 343 U.S. 977, 72 S.Ct. 1072, 96 L.Ed. 1369 (1952).

The court has tried in many ways to assist these, now *pro se*, plaintiffs to properly document and present their claims. Plaintiffs, however, have failed to demonstrate to this court that a claim within this court's jurisdiction has been properly presented. The Court, therefore, has no choice but to grant defendant's Motion to Dismiss and to dismiss this action, with prejudice.

*Conclusion*

For the reasons stated above, defendant's Motion to Dismiss is granted.

IT IS SO ORDERED.

NO COSTS.

