Raymond L. and Sherry L. ROBERTS, Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 420–85C.

United States Claims Court.

Oct. 12, 1989.

Brian J. Coyne, Olympia, Wash., for plaintiffs. Miles, Way & Coyne, of counsel.

Mark A. Melnick, Washington, D.C., with whom was Acting Asst. Atty. Gen. Stuart E. Schiffer, for defendant. James E. Alexander, Dept. of Agriculture, Portland, Or., of counsel.

## ORDER

NETTESHEIM, Judge.

This case was transferred to this court on July 31, 1989, following remand from the Federal Circuit. Since trial has been scheduled, an expedited briefing schedule on defendant's renewed motion for summary judgment was ordered. Plaintiffs have opposed and argument has been held.

## BACKGROUND

On September 2, 1988, the Claims Court received the mandate of the Federal Circuit reversing the judgment entered upon the opinion reported as *Roberts v. United States*, 13 Cl.Ct. 774 (1987) (Napier, J.), *rev'd and remanded*, 856 F.2d 201 (Fed. Cir.1988) (Table), and remanding the case for trial. Defendant had moved for summary judgment on the basis of the allegations of plaintiffs' complaint. Upon remand discovery ensued, and the parties agreed to extend the period of discovery to August 1, 1989. On July 19, 1989, defendant moved to amend its answer to assert an offset pursuant to 11 U.S.C. § 553(a) (1988). After the case was reassigned to this judge, a scheduling order entered on August 1, 1989, setting trial to commence on October 23, 1989. On August 7, 1989, defendant's motion to assert an offset was granted as unopposed. Plaintiffs did not respond to the offset within the time provided by Rule. RUSCC 7(a), 12(a).

On August 9, 1989, defendant moved to suspend the trial schedule on the basis that discovery had revealed new grounds to support a renewed motion for summary judgment. Because plaintiffs opposed a suspension of the trial schedule, an order entered on August 16, 1989, scheduling expedited briefing and argument on defendant's renewed motion so that the motion could be argued and decided before the filing of pretrial submissions and trial. Due to the imminence of trial, the court ruled from the bench on defendant's renewed motion and advised that this order would follow.

## FACTS

Since the facts have been recited in Judge Napier's 1988 opinion and in the Federal Circuit's decision, confusion is minimized by adopting the Federal Circuit's discussion of the facts that were established by defendant's first motion for summary judgment and those that remained for trial:

Roberts sought to recover damages for the alleged breach by the Farmers Home Administration (FmHA) of an implied-in-fact contract to make a loan in the amount of $150,000 for the purchase of dairy cows. For purposes of ruling on the government's motion for summary judgment, the Claims Court assumed there was a "meeting of the minds" regarding the loan between Roberts and the county supervisor and that the latter could issue Economic Emergency (EE) loans "for amounts up to $350,000." However, in responding to the government's "Proposed Findings of Uncontested Facts," Roberts stipulated that they did not file a formal loan application, FmHA Form 410–1, with respect to the EE loan at issue. The Claims Court held

that in the absence of a formal loan application for the EE loan, the county supervisor lacked authority to make such a loan, and thus there could be no implied-in-fact contract.

Roberts presented evidence, however, that a proper loan application had been submitted prior to the receipt of a FmHA loan in the amount of $90,000 on August 20, 1980. This loan was designated as a Farm Ownership (FO) loan and was used by Roberts principally for the purchase of farm property. Thereafter, a second FmHA loan in the amount of $30,000 was made to Roberts on August 27, 1980, which was designated as an EE loan. Roberts stated by affidavit that this EE loan was made on the basis of the initial loan application and that no further loan application was required. Thus, the current FO loan application was apparently deemed sufficient for the $30,000 EE loan. Moreover, the provisions of the regulations cited by the Claims Court in support of its decision do not specifically require that a new, *separate* loan application form be submitted each time a loan is made or increased.

We conclude that genuine issues of fact exist as to whether the county supervisor lacked lending authority to approve the remaining amount of the EE loan which, based on the undisputed facts and inferences in favor of the non-movant, Roberts, we must assume he had agreed to provide Roberts. Accordingly, the summary judgment of the Claims Court is reversed and the case is remanded for trial.

*Roberts,* No. 1165, slip op. at 1–3 (Fed.Cir. Aug. 12, 1988) [856 F.2d 201 (Table)] (emphasis in original).

Defendant's renewed motion for summary judgment urges dismissal based on failure of consideration for the implied-in-fact contract to make a loan and/or based on the complaint's pleading nonrecoverable consequential damages. The undisputed material facts and the disputed material facts that plaintiffs are entitled as the opponents of summary judgment to be viewed in their favor follow.

1. In paragraph 3.7 of their verified complaint, plaintiffs Raymond L. and Sherry L. Roberts, d/b/a Roberts Farm ("plaintiffs"), pleaded that a valid consideration existed for the implied-in-fact contract between themselves and the Farmers Home Administration (the "FmHA") for a loan of $150,000.00 to enable plaintiffs to purchase 100 dairy cows. They further alleged:

> Mr. and Mrs. Roberts borrowed money from the FmHA, signed promissory notes, pledged collateral, entered into Real Estate Contracts, and executed other legal documents upon the understanding that they would be able to purchase the required number of cattle.

Compl. filed July 22, 1985, ¶ 3.8.

Defendant inquired during discovery specifically as to the nature of the consideration flowing to the FmHA. Plaintiffs responded that consideration consisted of seven obligations or detriments. First, they obtained by promissory note signed on June 18, 1979, a consolidation loan to refinance all previous operating loans at 9½ percent interest, "a considerably higher interest rate than the loans that it replaced," Plfs' Answer to Interrogatory No. 8, as required by the County Supervisor for the subject loan. Second, according to plaintiffs, on June 18, 1979, they gave the FmHA a security interest in their 80–acre farm and farm equipment, which contemplated plaintiffs' incurring a further indebtedness. Third, plaintiffs borrowed from the FmHA for the installation of a silage pit and manure lagoon, "all towards the purpose of accommodating eventually 200 or more dairy cows once ... [plaintiffs] had purchased the Poppe farm and purchased the additional 100 cows." *Id.* Fourth, plaintiffs signed a promissory note on August 20, 1980, in favor of the United States for $90,000.00, $69,000.00 of which was applied as a down payment on the Poppe Farm and the balance applied to finish the silage pit (referred to above) that plaintiffs "would not need if they were not significantly increasing the number of dairy cows." *Id.* Fifth, on July 7, 1980, plaintiffs signed an option to purchase the Poppe farm, paying $1,500.00 to the Poppes as sellers. Sixth, plaintiffs entered into a

real estate contract on August 20, 1980, to purchase the Poppe farm for a total purchase price of $230,000.00, with a $69,-000.00 down payment, the balance to bear interest at 8½ percent, payable at the rate of $1,678.50 per month. Seventh, plaintiffs signed another promissory note on August 27, 1980, in favor of the United States for the principal amount of $30,000.00 for another FmHA loan, plus interest at 11½ percent per annum, payable in 8 annual installments. Plaintiffs stated that they accepted this loan, which "was not the loan they asked for or desired....", *id.*, but accepted it "on the condition that loan funds would be provided for the purchase of an additional 80 dairy cows or any additional dairy cows would be delivered to their farm by FmHA upon their assuming an existing FmHA loan...." *Id.*

On the basis of this response, defendant renewed its motion for summary judgment based on failure of consideration, arguing that each cited element of consideration either constituted consideration for an independent express contract or supported a claim of promissory estoppel, not cognizable in the Claim Court. In responding to defendant's interrogatories, and in his two affidavits, plaintiff Raymond L. Roberts did not indicate whether he had ever discussed with County Supervisor Roy A. Hogan the terms of the loan—specifically, the duration, amount of each repayment, and interest rate. When the court questioned on point, plaintiffs' counsel represented that there was evidence of record that plaintiff and Mr. Hogan had agreed to a seven-year term at 11.5 percent interest. However, according to counsel, the Request for Obligation of Funds of July 7, 1980, evidencing that understanding had been changed after Mr. Roberts had signed it to reflect a loan amount of $30,000.00 instead of $150,000.00, the amount upon which they had agreed. Leave was given for Mr. Roberts to submit a third affidavit. This affidavit confirms the allegations as to duration and interest rate, adding particulars as to the terms of repayment. Affidavit of Raymond L. Roberts, Oct. 7, 1989, p.3 ¶ (2) ("Third Roberts Aff.").

2. In their verified complaint, plaintiffs sought the following categories of damages:

catastrophic property losses, including the loss of the real property, all personal property, farm and business equipment, their personal residence, all livestock, all income and future income and profits, and other losses and injury.

... Plaintiffs have suffered, and will continue to suffer, severe and extreme emotional distress[;] humiliation; a reduction in earning capacity; a reduction in their ability to enjoy life; mental anguish and anxiety; and costs and expenses of federal bankruptcy proceedings, including attorney fees.

Compl. ¶¶ 4.1–4.2.

Defendant's interrogatories inquired specifically as to the facts plaintiffs would adduce to support their claim for damages. Plaintiffs' response is quoted in full:

See Calculation of Damages document attached hereto. The said calculation shows the plaintiffs' lost milk revenues for lack of the additional 80 cows that FmHA's County Supervisor, Ray Hogan, promised to them. It shows the revenue from those 80 cows' offspring that they would have earned in the years 1981 through 1989. It shows the value of the food that the Roberts' would have grown for their own consumption on the farm had they been able to stay there through 1989, instead of having to move at the end of June, 1985. Breach of the implied-in-fact agreement led to the bankruptcy, and the bankruptcy forced the Roberts' from the farm on or about June 30, 1985. Likewise, livestock were taken away and slaughtered in October 1984, pursuant to the bankruptcy procedure. They also encountered lost rental value of the farm home from July, 1985 to the present, at a rate of $575 per month. They lost their investment in the farm— see details in the Calculation of Damages. The connection of each loss to the breach of the implied-in-fact agreement by the government is simply that these losses would not have occurred had FmHA kept its promise to finance the additional 80 cows. After paying for ad-

ditional interest on the $120,000 for an additional 80 cows, and after paying for the additional feed costs and other costs, the Roberts' would have netted a profit of $196,490, more or less in the years 1981 through 1989. They would have netted an additional $68,400 in revenue from those 80 cows' offspring in the years 1981 through 1989. Then, at the end of 1989, they could have sold the 80 cows at about $600 per cow, not for slaughter, but sold as dairy cows, for an additional $48,000 in income. In short, from FmHA's breach of its explicit, unambiguous promise to provide funding for an additional 80 cows above and beyond the 20 that were being provided through a $30,000 EE loan on August 27, 1980, FmHA proximately caused the bankruptcy and the damages alleged. In addition to damages shown in the Calculation of Damages, plaintiffs also claim prejudgment interest thereon, as well as court costs and a reasonable attorney fee pursuant to the Equal Access to Justice Act, Public Law No. 99–80, 99 Statute 183 (1985) (codified as amended at 5 USC Section 504 and 28 USC Section 2412).

Plfs' Answer to Interrogatory No. 16.

3. Another development after remand in this case was defendant's assertion of an offset. Plaintiffs did not oppose defendant's motion to assert this offset after remand. Moreover, in its motion defendant represented:

Defendant stands prepared to cooperate with the plaintiff[s] by providing whatever appropriate documentation or evidence [plaintiffs require] to evaluate the defendant's support for the offset. Additionally, defendant would not oppose an extension of the discovery period for plaintiff[s] to further investigate this issue.

Def's Mot. filed July 19, 1989, at 3. Plaintiffs did not oppose defendant's motion, request additional time to discover defendant's case in support of its offset, or respond to the offset. By way of offset, defendant sought as of October 4, 1983, when plaintiffs filed their petition in bankruptcy, $413,618.97 of principal on loans dating from 1978 to 1980 and $81,346.11 in interest on those loans. Defendant agrees to abandon its offset of interest subsequent to October 4, 1983, since plaintiffs do not seek prejudgment interest accruing after that date.

### DISCUSSION

Although the Federal Circuit has directed the Claims Court to try this case, defendant renewed its motion for summary judgment on grounds different than urged in its prior unsuccessful motion. Defendant originally contended that it was entitled to summary judgment because plaintiffs had failed to submit an application for the $150,000 loan. Since the application was a prerequisite, by regulation, for the loan, defendant took the position that the officials who agreed to make the loan lacked authority to do so. Defendant conceded: "Solely for the purposes of this motion, we shall accept the Robert[s'] allegations that they reached a meeting of the minds with certain unnamed FmHA county representatives." Def's Br. filed May 19, 1986, at 2. Essentially, defendant's renewed motion derogates from its prior concession, since it attacks contract formation. This court would not be disposed to give defendant two bites of the apple if defendant could have argued a failure of consideration in its earlier motion. However, at that time defendant chose to forego discovery and took its aim against the averments of plaintiffs' verified complaint. Plaintiffs have been put to the time and expense of defending against two summary judgment motions over a longer than three-year period, when hindsight teaches that defendant might have taken minimal discovery and made a motion that covered all available bases. Moreover, the Federal Circuit has ordered a trial in part because on the record plaintiffs were entitled to the assumption that there was a "meeting of the minds." *Roberts*, No. 88–1165, slip op. at 2, 3 [856 F.2d 201 (Table)].

■■■ The mandate of the Federal Circuit calling for trial was based on the assumption that the County Supervisor agreed to provide a loan to plaintiffs. *Id.*, slip op. at 3. The mandate binds this court to follow it without deviation. *Briggs v.*

*Pennsylvania R.R.*, 334 U.S. 304, 306, 68 S.Ct. 1039, 1040, 92 L.Ed. 1403 (1947). The decision of an appellate court on an issue of law becomes the law of the case on remand. *See Messenger v. Anderson*, 225 U.S. 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152 (1912). Nonetheless, if a matter has not been decided on appeal, the lower court may resolve as much as has been remanded. *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255, 16 S.Ct. 291, 298, 40 L.Ed. 414 (1895). *See generally Ulmet v. United States*, 17 Cl.Ct. 679, 689–92 (1989). Failure of consideration was not the subject of defendant's earlier motion, nor did the record at that time permit defendant to move on that ground. Judge Napier—and, as a consequence, the appellate court—assumed mutuality, including the agreement on a bargained-for consideration. This court concludes that in the circumstances the matter was not decided on appeal and, thus, that the mandate calling for trial precluded only further inquiry short of trial into the application requirement. *Cf. Burlington Indus., Inc. v. Dayco Corp.*, 849 F.2d 1418, 1422 (Fed.Cir.1988) (on remand following grant of summary judgment, trial court able to reconsider its conclusions on issues previously passed on that were not before appellate court).

■ Summary judgment pursuant to RUSCC 56 properly can intercede and prevent trial if defendant can demonstrate that trial would be useless in that more evidence than is already available in connection with its motion could not reasonably be expected to change the result. *Pure Gold, Inc. v. Syntex (U.S.A.), Inc.*, 739 F.2d 624, 626 (Fed.Cir.1984). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action....'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

*Id.; see also Universal Life Church, Inc. v. United States*, 13 Cl.Ct. 567, 580 (1987) (citing cases), *aff'd*, 862 F.2d 321 (Fed.Cir. 1988) (Table).

■ 1. Defendant relies on established law set down by the Court of Claims that to be valid an implied contract "must be entirely unrelated to an express contract. The existence of an express contract precludes the existence of an implied contract dealing with the same subject." *ITT Fed. Support Serv., Inc. v. United States*, 209 Ct.Cl. 157, 168 n. 12, 531 F.2d 522, 528 n. 12 (1976) (citing cases). To be entirely unrelated to the express contracts with the FmHA or the Poppes involved in each of the seven manifestations of consideration claimed by plaintiffs, the implied-in-fact contract would have to require plaintiffs to assume some duties different from those under the formal agreements. 209 Ct.Cl. at 168, 531 F.2d at 528. Plaintiffs' counsel was questioned at argument as to plaintiffs' showing of the requisite meeting of the minds as to a separate, independent consideration inferable from the parties' conduct. Plainly, there must be mutuality of intent to contract and an unambiguous offer and acceptance. *See Prudential Ins. Co. of America v. United States*, 801 F.2d 1295, 1297 (Fed.Cir.1986), *cert. denied*, 479 U.S. 1086, 107 S.Ct. 1289, 94 L.Ed.2d 146 (1987). Mr. Roberts' third affidavit corroborates counsel's representation that the July 7, 1980 Request for Obligation of Funds, which was part of the record before argument, reflects the terms of the new $150,000.00 loan. Plaintiffs therefore have created a genuine issue of material fact as to the existence of valid consideration supporting the implied-in-fact contract to made a loan. It should be noted that defendant made a compelling argument that the documents of record belie a meeting of the minds, since the various plans reflect that subsequent to June 1979 plaintiffs consist-

ently sought financing for 20–30 cows. Mr. Roberts has averred that the loan amount was reduced after he signed the July 7, 1980 request, but before County Supervisor Hogan signed it: "[W]e agreed at the time that I signed it that Roy Hogan would fill out the form consistent with the terms that we discussed and agreed upon...." Third Roberts Aff. p.4 ¶ (2). The document recites a loan amount of $30,000.00, which is the crucial figure alleged to have been altered from the prior meeting of the minds. Although defendant's reading of the documents is plausible, the court cannot weigh the evidence and determine the truth of the matter on summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 255, 106 S.Ct. 2505, 2510, 2513, 91 L.Ed.2d 202 (1986).

■ 2. Defendant takes the position that plaintiffs cannot prove that they suffered damages from the breach of the alleged implied-in-fact contract because they failed to make application for alternative financing with other lending institutions. It is not fatal to plaintiffs' claim for relief if they did not do so, for, as the Federal Circuit took occasion to explain in *Dahl v. United States*, 695 F.2d 1373, 1374 (Fed. Cir.1982), "[t]he FmHA makes low-interest loans to farmers who are unable to obtain credit elsewhere from commercial sources...." For plaintiffs the FmHA was a lender of last resort. 7 C.F.R. § 1943.6 (1980). In any event, plaintiff Raymond L. Roberts avers that plaintiffs did seek alternative financing in 1981. Affidavit of Raymond L. Roberts, Sept. 23, 1989, ¶ " *P.S."

■ Assuming that an implied-in-fact contract to make a loan were proved by a preponderance of evidence at trial, plaintiffs would not be without a monetary remedy unless the type of damages claimed was too remote and speculative and, hence, constitutes unrecoverable consequential damages. *See William Green Constr. Co. v. United States*, 477 F.2d 930, 201 Ct.Cl.

616, 626–27, 477 F.2d 930, 936–37 (1973), *cert. denied*, 417 U.S. 909, 94 S.Ct. 2606, 41 L.Ed.2d 213 (1974) (citing cases); *H.H.O. Inc. v. United States*, 7 Cl.Ct. 703, 707 (1985); *Loftin v. United States*, 6 Cl.Ct. 596, 611 (1984), *aff'd mem.*, 765 F.2d 1117 (Fed.Cir.1985). The Court of Claims allowed recovery based on loss of anticipated profits: "This is a recognized measure of damages, where the loss is the proximate result of the breach and the fact that there would have been a profit is definitely established, and there is some basis on which a reasonable estimate of the amount of the profit can be made...." *Neely v. United States*, 152 Ct.Cl. 137, 146, 285 F.2d 438, 443 (1961).*

In the case at bar, plaintiffs had a family history of dairy farming and, prior to the period during which the alleged implied-in-fact contract came into being in mid–1980, operated their farm as a business venture for at least five years. If sufficient evidence is adduced to enable the court to make a fair and reasonable approximation of damages, that will suffice. *S.W. Elec. & Mfg. Corp. v. United States*, 228 Ct.Cl. 333, 351, 655 F.2d 1078, 1088 (1981) (citing cases). Plaintiffs' calculation of "lost milk revenues" provided in answer to defendant's interrogatories is sufficient to overcome defendant's motion for summary judgment insofar as it constructs lost profits for the period January 1981 through December 1989 at $196,490.00. However, in addition to definitely establishing these profits, plaintiffs must prove that the nine-year period from 1981 through 1989 was foreseeable. *Prudential Ins. Co.*, 801 F.2d at 1300. This appears problematic.

It also appears that defendant's offset could swallow the potential recovery. Indeed, even assuming that plaintiffs were able to recover all of the damages listed in their answers to interrogatories, allowing defendant's offset as of October 1983 would result in a negative recovery. Plaintiffs offered the following "Summary of Damages":

*footnote*

\* *Nelson v. United States*, 16 Cl.Ct. 510, 516 (1989), is to the contrary. It is not clear whether the court was speaking to lost profits claimed in

respect of a new venture, in which case the statement would have been correct.

| | |
|---|---:|
| Lost milk revenues from 80 more cows | $196,490 |
| Lost revenues from sale of 80 cows' calves | 68,400 |
| Lost revenues from sale of 80 dairy cows | 48,000 |
| Lost farm produce for family use | 29,250 |
| Rental expense | 31,050 |
| Bankruptcy expense | 660 |
| Lost investment in farm | 251,984 |
| Total | $625,834 |
| Less Earnings by alternative employment | −142,900 |
| TOTAL DAMAGES | $482,934 |

Plfs' Answer to Interrogatory No. 16.

■ Although defendant would not concede that plaintiffs' claim for lost profits ("lost milk revenues from 80 more cows") is recoverable, defendant is correct that lost revenues from the sales of the 80 cows' calves, lost revenues from the ultimate sale of the original 80 dairy cows, lost farm produce for family use, rental expense, bankruptcy expense, and lost investment in the farm are consequential damages and cannot be recovered unless plaintiffs can establish that they were foreseeable when the parties entered into the implied-in-fact contract. *Prudential Ins. Co.*, 801 F.2d at 1300; *cf. Ramsey v. United States*, 101 F.Supp. 353, 121 Ct.Cl. 426, 434, *cert. denied*, 343 U.S. 977, 72 S.Ct. 1072, 96 L.Ed. 1369 (1952) (anticipated profits of entire business enterprise, not only contracts in question, nonrecoverable); *Nelson v. United States*, 16 Cl.Ct. 510, 516 (1988) (damages for breach of FmHA contract to loan money resulting in bankruptcy or loss of business nonrecoverable); *Nutt v. United States*, 12 Cl.Ct. 345, 353 n. 3 (loss of farming operation and harm to reputation in community from breach of FmHA contract to loan nonrecoverable), *aff'd sub nom. Smithson v. United States*, 847 F.2d 791 (Fed.Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 782–83, 102 L.Ed.2d 774 (1989); *H.H.O. Inc.*, 7 Cl.Ct. at 707–08 (refusal of building company to issue bonds on behalf of contractor on other contracts nonrecoverable). To the extent that some elements of damages may be characterized as lost business opportunities, *e.g.*, lost revenues from the sale of the original 80 cows, they are too speculative as a matter of law. *Olin James Sand Co. v. United States*, 225 Ct.Cl. 741, 744 (1980); *William Green Constr. Co.*, 201 Ct.Cl. at 626, 477 F.2d at 936. Moreover, a bankruptcy petition filed three years after the FmHA refused the subject loan appears to be speculative.

■ The point to be made is not whether defendant has established that plaintiffs could prove no set of facts that would render the components of their damages recoverable, but, rather, that all of plaintiffs' damages components (even including elements that are nonrecoverable as a matter of law) would be unavailing against the amount of defendant's offset, including accrued interest. The issue becomes whether trial would be a waste of the parties' and judicial resources.

Having failed to respond to defendant's offset, plaintiffs have admitted the amounts claimed (some $495,000.00), RUSCC 8(d), but not defendant's entitlement under 11 U.S.C. § 553(a). The general principles of equity govern the application of this statute, and the rule in equity "[varies] with the needs of the occasion." *Lowden v. Northwestern Nat'l. Bank & Trust Co.*, 298 U.S. 160, 164, 56 S.Ct. 696, 698, 80 L.Ed. 1114 (1936) (Cardozo, J.). To permit or deny a set-off prior to the development of the relevant facts would be inappropriate. *In re Duplan Corp.*, 455 F.Supp. 926, 933 (S.D.N.Y.1978) (motion to dismiss or for judgment on the pleadings denied). Defendant's renewed motion for summary judgment did not seek judgment

on the basis that the equities lie with the FmHA and not plaintiffs. RUSCC 56(c) permits summary judgment only when the movant establishes its entitlement as a matter of law. Thus, plaintiffs will have their trial.

## CONCLUSION

Defendant's renewed motion for summary judgment is treated as a motion *in limine* insofar as plaintiffs will be precluded from contending that consideration for any express contract supports the implied-in-fact contract to make a loan. Defendant's motion is otherwise denied without prejudice to renewal pursuant to RUSCC 41(b).