**Benton C. CAVIN, et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

No. 168–87L.

United States Claims Court.

Dec. 29, 1989.

Benton C. Cavin, Pleasant Hill, Cal., pro se.

Bernard M. Sisson, with whom was Patricia N. Young, Land and Natural Resources Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## OPINION

LOREN A. SMITH, Chief Judge.

The present case arises out of a long-standing dispute between plaintiffs and the United States Forest Service as to the ownership of a tract of mountain land. The case is before the court on defendant's motion to dismiss, which is predicated on three grounds: (1) plaintiffs fail to state a claim upon which relief can be granted; (2) plaintiffs' claim is time-barred under the applicable statute of limitations; and (3) this court lacks subject matter jurisdiction over plaintiffs' claim. For the reasons set forth below, defendant's motion to dismiss must be granted.

This has been a difficult case for this court to decide. The facts present an apparent case of highly offensive conduct by employees of the United States Forest Service with respect to property claims of the plaintiffs. The court had hoped that a settlement or administrative proceeding encouraged by the court might resolve the matter with some equity.[1] Unfortunately this was not to be. Mr. Cavin is not a lawyer and has represented himself and his relatives very ably in a complex matter. It is therefore a hard task to grant the government's motion to dismiss, and to deny plaintiffs a remedy. However, the role of a judge who does his or her duty is not to produce a "good" result, but a result that the law compels. In this case the policy behind the statute of limitations leads to a less than ideal result. However, there is no escape from this result consistent with our judicial oath to follow the law.

---

1. In its order of February 4, 1988, the court called upon the Secretary of Agriculture to expedite a decision of the Cavins' administrative claims. On April 19, 1988, the court issued an order to show cause why sanctions should not be imposed on the Secretary of Agriculture, for refusing to provide the court with copies of the decisions on the Cavins' administrative claims. On May 3, 1988, the Department of Agriculture denied Mr. Cavin's administrative claim for damages. On June 24, 1988, the court advised Mr. Cavin that if he wished to preserve his right to appeal the Department of Agriculture's deci-

## FACTS

Plaintiffs allege in their complaint[2] that the United States Forest Service undertook to harass them[3] into surrendering forty acres of mountain property in Soquel, Madera County, California. Plaintiffs purchased the property, under color of title, from Louise Hill in 1942. The tract, which is bordered on three sides by federal land, has been recognized as private property by the Forest Service since 1899. In 1940, the Forest Service surveyed the tract and posted it as private property.

In 1963, the Forest Service asked plaintiffs to produce proof of ownership, stating that the land appeared to belong to the United States. Plaintiffs produced their deed, title insurance, and tax records, but the Forest Service was not satisfied, and requested that the Cavins produce the original patent by which the land had been transferred to them from the United States. The Cavins were unable to produce this patent, and to date, the true origin of title remains unknown.

Between 1963 and 1975, plaintiffs retained three attorneys to assist them in establishing title to the property. The first attorney, Lester J. Gendron of Madera, California, chose not to file an application for a patent under the Color of Title Act, 43 U.S.C. § 1068 (1982), after the Forest Service informed then Congressman B.F. Fisk that such an application would not settle the dispute. Meanwhile, the Forest Service refused to institute legal action to settle the dispute, and instead resorted to extralegal tactics to provoke plaintiffs into suing the government. Apparently, the Forest Service declined to sue in order to force the Cavins into a position where they would bear the burden of proof of establishing ownership.

Beginning in 1969 and continuing until 1974, the Forest Service repeatedly intruded onto the property in an effort to harass plaintiffs. Among other things, the Forest Service destroyed two cabins, engaged in logging on the land, diverted a stream, and relocated a road. In 1976, plaintiffs' third attorney, William Crossland of Fresno, California, advised plaintiffs that contrary to the Forest Service's assertions, filing an application for a patent under the Color of Title Act was the route to relief. On February 17, 1976, Benton Cavin filed an application for a patent, which the Interior Board of Land Appeals approved on October 5, 1984. *Benton C. Cavin*, 83 I.B.L.A. 107 (1984).

Mr. Cavin also filed claims with the Department of Agriculture for damages arising out of the Forest Service's activities on the property. While these claims were pending, plaintiffs filed the instant suit in this court, asserting jurisdiction under the Tucker Act, 28 U.S.C. § 1491 (1982) and the Fifth Amendment to the United States Constitution. On May 3, 1988, the Department of Agriculture denied plaintiffs' administrative claims for damages. By order of June 24, 1988, this court advised Mr. Cavin that if he wished to preserve his right to appeal the Department of Agriculture's decision, he should promptly file an action for judicial review of that decision in federal district court.

## DISCUSSION

### I. Failure to state a claim.

 The first issue to be resolved is whether the case should be dismissed under RUSCC 12(b)(4) for failure to state a claim upon which relief can be granted. In ruling on such a motion, the court must presume all factual allegations of the complaint to be true, and must make all reasonable inferences in favor of the non-moving party. *Miree v. Dekalb County, Georgia*, 433 U.S. 25, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977); *Kugler v. Helfant*, 421 U.S. 117, 95 S.Ct. 1524, 44 L.Ed.2d 15 (1975), *reh. den.*,

---

sion, he should file an action for judicial review of that decision in federal district court.

2. Because the court is considering defendant's motion to dismiss, it construes the complaint in the light most favorable to plaintiffs.

3. The complaint names as plaintiffs "Benton C. Cavin, Benton C. Cavin as assignee of Lorna M. Osburn, Benton C. Cavin as assignee of Robin C. Cavin, Benton C. Cavin as executor of the estate of Carl T. Cavin, Doreen N. Cavin, Lorna M. Osburn, [and] Dennis C. Osburn."

421 U.S. 1017, 95 S.Ct. 2425, 44 L.Ed.2d 686 (1975); 2A Moore's Federal Practice § 12.07 (1989). In *Scheur v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), the court stated that when a court reviews the sufficiency of a complaint, its task is a limited one, the issue being "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Moreover, when a complaint is *pro se,* as in the present case, it is to be held to less stringent standards than formal pleadings drafted by lawyers. *See Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

■ In light of the foregoing, it is clear that the issue is merely under what theory of liability plaintiffs should proceed, not whether plaintiffs are entitled to present evidence in support of their claim. Defendant argues that the complaint is insufficient because plaintiffs' theory is that the Forest Service intrusions created a cloud over plaintiffs' title. However, a liberal reading of the complaint shows that plaintiffs allege what appears to be a temporary taking, or perhaps a series of tortious acts of interference with plaintiffs' right to use and possess their land. While the complaint is not a model of clarity, it should not be dismissed merely because plaintiffs fail to plead the technical elements of a given legal theory. *See Fadem v. United States,* 13 Cl.Ct. 328 (1987); *Bettini v. United States,* 4 Cl.Ct. 755 (1984).

## II. The statute of limitations.

Under 28 U.S.C. § 2501 (1982), "[e]very claim of which the United States Claims Court has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." At the latest, plaintiffs' claim based on inverse condemnation accrued in 1969, when the Service began taking actions on plaintiffs' property to show that it considered the land to be government property. *See United States v. Clarke,* 445 U.S. 253, 258, 100 S.Ct. 1127, 1130, 63 L.Ed.2d 373 (1980); *Eyherabide v. United States,* 170 Ct.Cl. 598, 345 F.2d 565 (1965).

Plaintiffs argue that the statute of limitations should not bar their taking claim, offering two grounds. First, plaintiffs argue that defendant should be estopped from asserting the defense of the statute of limitations, since defendant's misrepresentations to plaintiffs, concerning filing for a patent under the Color of Title Act, caused plaintiffs to delay filing until 1976. In essence, plaintiffs argue that the Forest Service intentionally jeopardized any claim they might have brought. The facts before the court do reveal that the Forest Service misrepresented the availability of filing for a patent to plaintiff Benton Cavin, to a congressman who agreed to aid the Cavins in their dispute, and to plaintiffs' lawyer. The court is sympathetic with plaintiff, but finds that as a legal matter, plaintiffs' argument is unconvincing.

Second, plaintiffs argue that the statute of limitations did not begin to run until the situation at their property "stabilized." The court finds this argument unpersuasive as well.

### A. Estoppel

■ In *Dickerson v. Colgrove,* 100 U.S. 578, 25 L.Ed. 618 (1880), the Supreme Court determined the principle underlying equitable estoppel to be that the party who

> leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted. Such a change of position is strictly forbidden. It involves fraud and falsehood, and the law abhors both.

100 U.S. at 580. Of course, "the government may not be estopped on the same terms as any other litigant." *Heckler v. Community Health Services,* 467 U.S. 51, 60, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984) (footnote omitted). Generally, estoppel cannot operate against the government where the government is acting in its sovereign (as opposed to its proprietary) capacity. *See, e.g., Cox v. Kurt's Marine Diesel of Tampa, Inc.,* 785 F.2d 935, 936 (11th Cir.1986); *United States v. Georgia Pacific,* 421 F.2d 92 (9th Cir.1970).

■ Furthermore, unlike a case involving private litigants, a court should apply

estoppel against the government only where a serious injustice would result otherwise. *See Wagner v. Director, Federal Emergency Management Agency,* 847 F.2d 515 (9th Cir.1988); *Donovan v. Master Printers Assoc.,* 532 F.Supp. 1140 (N.D. Ill.1981), *aff'd.,* 699 F.2d 370 (7th Cir.1983), *cert. denied,* 464 U.S. 1040, 104 S.Ct. 703, 79 L.Ed.2d 168 (1984).

Regardless of whether the Forest Service was performing a proprietary or a sovereign function, plaintiffs have not shown that a serious injustice would result if estoppel is not applied against the government. There is also considerable doubt as to whether plaintiffs could even establish the four traditional elements of estoppel that apply against any litigant.

### 1. Serious injustice

■ In the instant case, there is no danger of resulting injustice in denying plaintiffs the benefit of estopping the government from asserting the statute of limitations as to the taking claim. In its June 24, 1988 order, the court put plaintiffs on notice that if they were to preserve an appeal of the Department of Agriculture's denial of their claim for damages for the intrusions on the land, they should file an action for judicial review of that decision within six months. 28 U.S.C. § 2401(b) (1982). Moreover, the essence of plaintiffs' claim is in tort, and the agency proceedings encompassed the torts alleged. The Cavins are not left without a remedy, in the absence of applying estoppel against the government. The court is unaware whether plaintiffs have filed an action in the appropriate district court for a review of the agency decision, but this court has done all that it could have done appropriately to make plaintiffs aware of this remedy.

*United States v. Wharton,* 514 F.2d 406 (9th Cir.1975), is distinguishable from the present case. In *Wharton,* the Ninth Circuit ruled that the government was estopped from ejecting the Wharton family from land which it had occupied for several generations, where the government misrepresented to the Whartons and their congressman that they could not file an application for a patent under the Desert Land Entry Act and the Color of Title Act. In fact, when the Whartons made inquiries, the tract which they occupied could have been acquired through a patent application. Later, at the time the ejectment action was brought, the land which the Whartons occupied had been reclassified, and was no longer eligible for a patent. The court ruled that the misrepresentations of Department of Interior officials amounted to affirmative misconduct, and went on to conclude that a serious injustice would result if the government were not estopped from ejecting the Whartons, since the Whartons would have been without a remedy after the ejectment.

Unlike the Whartons, the Cavins obtained a patent to the land they occupied. Furthermore, the Cavins had a remedy—a viable action for judicial review of their claims for damages that were denied by the Department of Agriculture—and were aware of this remedy, as of June 24, 1988. If they chose not to pursue this action after being put on notice that it was perhaps their only route to relief, then they are in no position to argue now that injustice can be avoided only by estopping the government from raising the statute of limitations defense.

### 2. The traditional elements of estoppel

Additionally, as stated above, there is considerable doubt as to whether plaintiffs have even made out the traditional elements of estoppel, which apply against any litigant. An oft-cited formulation of these elements is found in *United States v. Georgia–Pacific Co.,* 421 F.2d 92, 96 (9th Cir. 1970): "(1) [t]he party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury."

■ The critical element in the present case is the fourth element, reliance. The law will not recognize one party's reliance upon another party's conduct or statements unless such reliance is reasonable. *See Heckler v. Community Health Services,*

467 U.S. 51, 65, 104 S.Ct. 2218, 2226, 81 L.Ed.2d 42 (1984); *Richmond v. Office of Personnel Management*, 862 F.2d 294, 299 (Fed.Cir.1988), *cert. granted,* — U.S. —, 110 S.Ct. 46, 107 L.Ed.2d 15 (1989). There is no allegation in the present case that the Forest Service in any way attempted to conceal the *facts* surrounding the intrusions upon the Cavin land; the Cavins at all material times believed that they were being wronged. When Mr. Cavin and his first lawyer were told that a patent proceeding would not settle the dispute, they were taking the word of an adversary. Relying on such representations was unreasonable, as one cannot expect even agents of the United States government to answer the inquiry of an adversary with candor. Furthermore, before Mr. Cavin decided to represent himself, his first attorney concurred in the judgment of Forest Service officials, and advised him that a patent proceeding would not settle the matter. *Cf. United States v. Wharton*, 514 F.2d 406 (9th Cir.1975) (reliance on representations of government officials regarding the availability of a patent proceeding, by persons not represented by an attorney, is reasonable).

Plaintiffs' arguments that the government is estopped from asserting the defense of the statute of limitations is another way of asking the court to invoke the doctrine of fraudulent concealment. In a typical case of fraudulent concealment, a tortfeasor hides his misdeeds or his identity from his victim, such that his victim fails to discover either the fact of his injury or the identity of his injurer until after the limitations period has run. In such a case, the court may rule that the victim's cause of action did not accrue until the victim knew or should have known of the injury, free from the influence of the tortfeasor. *See generally Japanese War Notes Claimants Assoc. v. United States*, 178 Ct.Cl. 630, 634, 373 F.2d 356 (1967) (plaintiff's ignorance of rights which should be known insufficient to suspend running of limitations period; plaintiff must show either that defendant concealed its acts with the result that plaintiff was unaware of their existence, or that the injury was inherently unknowable).

In the present case, the Cavins at all relevant times believed that they were being wronged. Furthermore, the Cavins knew that it was the Forest Service who was intruding onto their land. There is no allegation that the Forest Service attempted to conceal its logging operations and other activities on the property; indeed, the Forest Service agents seemed to want to provoke the Cavins into suing the government, so that the Cavins would bear the burden of proof of establishing ownership of the land. While the court strongly disapproves of the Forest Service's misleading the Cavins into believing that they could not settle the dispute through the patent application process, this case is not a proper one for invoking the doctrine of fraudulent concealment in favor of the Cavins.

## B. The stabilization doctrine

■ In the realm of takings claims, the stabilization doctrine of *United States v. Dickinson*, 331 U.S. 745, 67 S.Ct. 1382, 91 L.Ed. 1789 (1947), also serves as a way to avoid the running of the statute of limitations, but this doctrine is inapplicable here. In *Dickinson*, a government-built dam caused gradual flooding of the Dickinson land. The flooding began on May 30, 1937, and the land was eventually inundated by September 22, 1938. Dickinson filed a taking claim on April 1, 1943. The court ruled that the claim was not time-barred under the six-year limitations period, notwithstanding the fact that suit was filed more than six years after the flooding began. "[W]hen the Government chooses not to condemn land but to bring about a taking by a continuing process of physical events, the owner is not required to resort either to piecemeal or to premature litigation to ascertain the just compensation for what is really 'taken'." 331 U.S. at 749, 67 S.Ct. at 1385. Since suit had been brought within six years of when the situation "stabilized," Dickinson's suit was not time-barred.

■ The stabilization doctrine of *Dickinson* is inapplicable to the present case. The situation stabilized as to the

Soquel property in 1974, when the intrusions ceased. There was no reason for plaintiffs to wait thirteen years before they filed their taking claim here.[4] Furthermore, the Forest Service actions were deliberate and discrete, whereas the stabilization doctrine speaks to situations involving continuing physical processes, such as gradual flooding.

### III. Subject matter jurisdiction.

■ The central issue raised by defendant's motion to dismiss under RUSCC 12(b)(1) is whether plaintiffs' complaint should be characterized as a taking or a series of torts. To the extent that the complaint can be read as making out a taking claim, the preceding discussion indicates that such a claim is time-barred. To the extent that the complaint can be read as alleging a tort, defendant correctly points out that this court cannot exercise jurisdiction over claims sounding in tort. *See* 28 U.S.C. § 1491 (1982); *Eastport Steamship Co. v. United States*, 178 Ct.Cl. 599, 372 F.2d 1002 (1967); *Lehner v. United States*, 1 Cl.Ct. 408 (1983). Such a claim does not belong here, and in the following section, the court discusses the propriety of transferring the tort claim to a district court.

### IV. Transfer under 28 U.S.C. § 1631.

■ 28 U.S.C. § 1631 provides in relevant part:

Whenever a civil action is filed in a court as defined in section 610 of this title ..., including a petition for review of administrative action, ... and that court finds that there is a want of jurisdiction, the court shall, in the interest of justice, transfer such action ... to any other such court in which the action ... could have been brought at the time it was filed, ... and the action shall proceed as if it had been filed in ... the court to which it was transferred on the date upon which it was actually filed in ... the court from which it is transferred.

Whether a claim should be transferred from the Claims Court to a district court rests with the sound discretion of the Claims Court. *See Williams Intern. Corp. v. United States*, 7 Cl.Ct. 726, 731 (1985), and cases cited therein.

■ The court has already concluded that it lacks subject matter jurisdiction over plaintiffs' claim. However, a transfer would not be in the interest of justice. "In the interest of justice" under section 1631 relates to the statute of limitations. If dismissal of a claim would result in the claim being time-barred when it is refiled in a court of proper jurisdiction, then justice requires transfer. *See McKeel v. Islamic Republic of Iran*, 722 F.2d 582, 591 (9th Cir.1983), *cert. denied*, 469 U.S. 880, 105 S.Ct. 243, 83 L.Ed.2d 182 (1984). Conversely, if the claim would have been time-barred even if it had been brought in the

---

**4.** The court notes that in addition to the statute of limitations bar, it is not even clear that plaintiffs would have had standing to sue under a taking theory at the time the acts complained of occurred. The Cavins did not have clear title to the Soquel property until the IBLA rendered its decision on the patent application on October 5, 1984, yet they seek compensation for intrusions upon the land which occurred prior to 1984. It is well-settled that a party cannot maintain a taking claim unless it owned the property at the time of the alleged taking. *See United States Olympic Committee v. Intelicense Corp.*, 737 F.2d 263, 268 (2d Cir.1984), *cert. denied*, 469 U.S. 982, 105 S.Ct. 387, 83 L.Ed.2d 321 (1984); *State of Illinois v. United States*, 15 Cl.Ct. 399, 410 (1988). Therefore, it appears that the Cavins cannot maintain a taking claim, since they do not have, and apparently never would have had, standing to assert one.

Still, the Cavins had a viable action for damages for the Forest Service's interference with their right to use and possess the property, which they pursued at least as far as receiving a denial of their claims before the Department of Agriculture. If the Cavins chose not to appeal that decision and instead to rely on their taking claim before this court as their sole route to relief, then the court fails to see how a dismissal of their taking claim would be unfair. Abandoning a right to review of the Department of Agriculture's decision was unreasonable, in light of the fact that at the time the Department rendered its decision, the government's motion to dismiss the Cavins' taking claim was still pending.

Of course, in light of the court's conclusion that plaintiffs are time-barred, a decision on whether plaintiffs have standing to assert a taking claim is unnecessary to the disposition of this case.

proper court, then a transfer is improper, and the case should be dismissed. *See, e.g., Jackson v. United States,* 10 Cl.Ct. 691 (1986).

Plaintiffs' complaint could be characterized as sounding in tort, and clearly the Claims Court would lack subject matter jurisdiction over such claims. *See* 28 U.S.C. § 1491 (1982); *Lehner v. United States,* 1 Cl.Ct. 408 (1983). Assuming arguendo that such a claim would not be precluded as duplicative of plaintiffs' administrative claims for damages, it would have been time-barred even if it had been filed in the proper court. *See* 28 U.S.C. § 2401(b).

Plaintiffs' only hope to recover seems to be to bring an action for judicial review of the Department of Agriculture's denial of their claims for damages, under the Administrative Procedure Act (APA), 5 U.S.C. § 702 (1982). The Department of Agriculture denied plaintiffs' claims on May 3, 1988, and plaintiffs had six months from that date to file an action for review of the agency denial. 28 U.S.C. § 2401(b). As to such an action, plaintiffs were on notice as of the June 23, 1988 status conference, and were again reminded in the court's June 24, 1988 order, that they should have filed at that time such an action in the appropriate district court. In its order, the court stated: "[S]hould plaintiffs seek to preserve an appeal of the May 3, 1988, Department of Agriculture decision denying their claims, they should file a complaint in the proper federal district court."

Plaintiffs have not sought to amend their complaint before this court to include an action for judicial review under the APA, so the court is without power to transfer that action to a district court under section 1631. As noted above, the court is unaware whether plaintiffs have filed such an action in district court. If they have not, and they do so subsequent to the issuance of this opinion, then it will be for the district court to decide whether the limitations period was tolled while the instant taking claim was pending.

## CONCLUSION

No equitable doctrine can save plaintiffs from the bar of the statute of limitations with respect to their taking claim. Transfer of the case, to the extent that the complaint sounds in tort, would be inappropriate. Accordingly, defendant's motion to dismiss the complaint is GRANTED. Costs are awarded to plaintiffs.