Sharon Taylor **GOOLSBY**, Plaintiff,

v.

The **UNITED STATES**, Defendant.

No. 90–118C.

United States Claims Court.

July 27, 1990.

Martin Sir, Nashville, Tenn., for plaintiff.

Steven A. Hemmat, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant. Steve Bott, Office of Gen. Counsel, Dept. of Agriculture, of counsel.

## ORDER

NETTESHEIM, Judge.

This case is before the court on defendant's motion to dismiss pursuant to RUSCC 12(b)(4) for failure to state a claim for relief. To be decided is the issue

whether damages sought by plaintiff for loss of reputation for credit and lost profits and attorneys' fees and costs expended in another lawsuit constitute non-recoverable damages. After defendant moved, plaintiff sought to amend her complaint over defendant's opposition. Plaintiff's motion was granted. Since defendant addressed the new complaint in its reply brief, the court treated defendant's motion as directed to the amended complaint. Consequently, plaintiff was allowed to file a sur-reply. Argument is deemed unnecessary.

### FACTS

The following facts derive from the complaint and its amendment. For the purpose of ruling on defendant's motion, all averments are taken as well-pleaded. Several of defendant's disputes with plaintiff's allegations are noted, although they play no role in deciding this matter.

Sharon Taylor Goolsby ("plaintiff") is a farmer in DeKalb County, Tennessee. On March 10, 1982, she gave a promissory note in the amount of $28,537.00 to the Cookeville Production Credit Association (the "CPCA"). Five months later, plaintiff applied to the Farmers Home Administration (the "FmHA") for a loan to refinance the CPCA promissory note. The FmHA denied this application (as well as a previous one in July 1981) on September 3, 1982. Plaintiff appealed the decision, and in April 1983 Johnny Crow, the FmHA State Director, reversed the DeKalb County FmHA decision. In his letter informing plaintiff of the decision, Mr. Crow stated that a loan would be made upon completion of a Farm and Home Plan. He also stated that the DeKalb County Supervisor would contact plaintiff "soon ... to determine if a sound loan can be made." Between April 1983 and February 1984, FmHA County Supervisor Jerry Jolley represented on several occasions that the loan had either already been approved or that approval was imminent.[1] Mr. Jolley required that any property refinanced be held in joint title with plaintiff's husband, stating that plaintiff's husband was to "take care of business and make all the decisions...." Amended Compl. filed June 19, 1990, ¶ 29. Plaintiff objected to this requirement and Mr. Jolley relented, allowing plaintiff to apply as an individual. Mr. Jolley made these representations knowing that any delay or failure to complete the necessary loan forms would result in litigation against plaintiff.

On February 6, 1984, plaintiff completed FmHA Forms 431–2 and 1940–1 (the "Farm and Home Plan"). One month later Mr. Jolley requested the loan funds. In the interim period prior to the loan's closing, Mr. Jolley and the CPCA discussed resolution of the outstanding debt.[2] To that end an FmHA Form 403–1 (the "debt adjustment agreement") was prepared to formalize resolution of the debt. This agreement stated that $22,000.00 would be a settlement for "all claims versus debtor." The FmHA received the loan funds on June 22, 1984. On September 18, 1984, plaintiff signed the agreement and endorsed the corresponding loan check with the notation that the check was "for the purpose of refinancing indebtedness owed ... [CPCA]."

However, when the FmHA delivered the check to the CPCA, the FmHA did not secure a corresponding signature to the debt adjustment agreement. Later the CPCA added qualifying language to the check such that the loan check did not relieve plaintiff from the balance of the obligation and, thus, amounted only to partial satisfaction of the debt.

In February 1985 the CPCA filed a promissory warrant ("replevin action") against plaintiff in the General Sessions Court of DeKalb County, Tennessee, to recover farm machinery and equipment, as well as livestock. Three weeks later the CPCA sued plaintiff in the DeKalb County General Sessions Court for $3,084.08, plus interest due on the promissory note. Plaintiff

---

1. Defendant denies this allegation in its entirety.

2. Defendant disputes this characterization. Defendant alleges that any discussions held between the FmHA and the CPCA were only to verify plaintiff's debt and to determine "whether CPCA would release its lien...." Def's Br. filed May 16, 1990, at 2.

then filed a third-party complaint against Mr. Jolley and the United States. The third-party defendants removed the action to federal district court. A jury returned a verdict for the CPCA in both the suits in the amount of $5,203.00. Plaintiff subsequently appealed and the Sixth Circuit reversed. *Cookeville Prod. Credit Ass'n v. Goolsby*, 840 F.2d 16 (6th Cir.1988) (per curiam) (unpubl.) The court held that the CPCA accepted the check with notice and knowledge that plaintiff intended the payment to be in full satisfaction of the debt. Further, the CPCA's limited endorsement was never communicated to plaintiff; hence, the CPCA's acceptance of the check constituted a full accord and satisfaction of the debt. Subsequently, the district court dismissed plaintiff's third-party complaint without prejudice and remanded the action to Tennessee state court. *Cookeville Prod. Credit Ass'n v. Goolsby*, No. 85-00151 (M.D.Tenn. Mar. 21, 1989) (unpubl.). Plaintiff unsuccessfully appealed this judgment, *Cookeville Prod. Credit Ass'n v. Goolsby*, 896 F.2d 553 (6th Cir.1990) (Table). The state court action continues.

Plaintiff filed the instant action on February 5, 1990, in order to toll the six-year statute of limitations on contract actions. She has requested the court to stay any Claims Court proceedings pending the outcome of the state court action. Her amended complaint seeking compensatory damages arising from yearly lost profits of $40,000.00, representing $200,000.00 over the years 1985–1989, pleads breach of an implied-in-fact contract due to the FmHA's alleged failure promptly to process her loan request and to obtain a precise debt settlement agreement with the CPCA. She also seeks $10,849.23 in attorneys' fees incurred in the district court litigation premised on the FmHA's alleged "bad faith." Amended Compl. ¶ 31.

### DISCUSSION

■ Plaintiff's motion to amend her complaint has been granted over defendant's opposition. RUSCC 15(a) mandates that "leave [to amend] shall be freely given when justice so requires...." Plaintiff's amended complaint adds allegations of bad faith and other elements of causation giving rise to her lost profits and attorneys' fees claims. Defendant had notice of these allegations, at least by implication, from the original complaint. *See* Compl. filed Feb. 6, 1990, ¶¶ 5, 13, 15, 17, 24–26. Thus, because plaintiff makes no wholly new claim and defendant was on notice of the facts underlying the new allegations, the amended complaint was allowed. Defendant's resistance stemmed from its position that the original complaint sought unrecoverable consequential damages. Although the amended complaint apparently drops plaintiff's claim for loss of reputation for credit in the community—that defendant correctly characterized as disallowable as a matter of law, *Nutt v. United States*, 12 Cl.Ct. 345, 353 n. 3 (1987), *aff'd sub nom. Smithson v. United States*, 847 F.2d 791 (Fed.Cir.1988), *cert. denied*, 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989)—granting plaintiff leave to amend her complaint was not futile in that plaintiff pleaded originally, and continues to plead, one measure of damages that withstands scrutiny on a motion to dismiss.

■ Since defendant has moved to dismiss both the complaint and its amendment for failure to state a cause of action,[3] all facts alleged by plaintiff must be regarded as established. *Adams v. United States*, 3 Cl.Ct. 696, 697 (1983) (order denying motion to dismiss). Further, all reasonable inferences will be made in favor of the non-movant. *Cavin v. United States*, 19 Cl.Ct. 190, 193 (1989) (order granting motion to dismiss). Thus, if there is any set of facts which could prove plaintiff's entitlement to relief based on her allegations, her claim should not be dismissed. *Hamlet v. United States*, 873 F.2d 1414, 1417 (Fed.Cir.

---

3. Rule 12(b)(4) requires the court to give notice to a party that it must respond as an opponent of summary judgment if matters outside the pleading are presented to and not excluded by the court. *See Blair v. United States*, 15 Cl.Ct. 763, 765 (1988). The court in this case has considered the court papers appended to defendant's motion only for verification purposes. They are not relied upon for decision.

1989). Defendant's contention that plaintiff has not stated a claim upon which relief can be granted fails on the grounds asserted.

### 1. *Lost Profits*

■ Defendant's primary contention is that plaintiff's lost profits damages are consequential and, hence, not recoverable. As a general rule, lost profits damages are recoverable if they are 1) proximately caused by the contract breach; 2) reasonably calculable, *Neely v. United States,* 152 Ct.Cl. 137, 146, 285 F.2d 438, 443 (1961); and 3) foreseeable at the time of contract. *Prudential Ins. Co. of America v. United States,* 801 F.2d 1295, 1297 (Fed.Cir.1986), *cert. denied,* 479 U.S. 1086, 107 S.Ct. 1289, 94 L.Ed.2d 146 (1987).

■ Defendant contends that, as a matter of law, plaintiff's lost profits damages were unforeseeable because they were too remote from the alleged breach of the implied-in-fact contract. Allegations of profits loss foreseeability entail a factual, not a legal, inquiry, *Prudential Ins. Co.,* 801 F.2d at 1300; and a RUSCC 12(b)(4) motion mandates acceptance of the nonmovant's factual allegations, along with all reasonable inferences arising therefrom. In the instant case, plaintiff has alleged that "it was contemplated ... that [she] would be sued by the PCA if the debt settlement agreement ... was not signed...." Amended Compl. ¶ 32. It is a reasonable inference that an action for possession of farm equipment could lead to lost profits from operations on that farm. As a result, the foreseeability of lost profits damages must be accepted for the purposes of this motion.

Defendant disputes plaintiff's profits loss of $200,000.00 both as to the amount and the basis for its calculation. Defendant implies that $200,000.00 is too large a

sum to have been contemplated at the time of contract. Similarly, defendant characterizes an identical $40,000.00 loss alleged to have been borne out over five years as speculative. It is true that plaintiff must prove her calculations of lost profits damages with specificity and must show a farming history.[4] *Roberts v. United States,* 18 Cl.Ct. 351, 357 (1989) (order denying motion for summary judgment) (citing *S.W. Elec. & Mfg. Corp. v. United States,* 228 Ct.Cl. 333, 351, 655 F.2d 1078, 1088 (1981) (citing cases)). Still, however fortuitous an identical five-year profits loss may seem, plaintiff's averments must be accepted pending trial. As the court stated in *Cavin:*

> When a court reviews the sufficiency of a complaint, its task is a limited one, the issue being "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims...."

19 Cl.Ct. at 194 (quoting *Scheur v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974)). These claims may be suspect, and may fail ultimately, but they cannot be rejected as a matter of law.

### 2. *Legal Fees*

■ Defendant challenges plaintiff's request for $10,849.23 in attorneys' fees and costs arising out of her litigation with the CPCA. Defendant relies on *Kania v. United States,* 227 Ct.Cl. 458, 650 F.2d 264, *cert. denied,* 454 U.S. 895, 102 S.Ct. 393, 70 L.Ed.2d 210 (1981), in asserting that any legal fees incurred are not recoverable as damages absent specific legislative authority to the contrary. Defendant is correct that plaintiff cannot use legal fees incurred in previous litigation, even if that litigation was a direct and proximate result or precipitated by a governmental breach of contract, as a basis for requesting those same attorneys' fees and costs in the instant

---

**4.** The court notes that defendant did not raise the issue of plaintiff's farming as a relatively new venture (which would place a heavier burden on plaintiff to prove her allegations of lost profits). The Federal Circuit has implied that at least a two-year period of lost profits is acceptable if the lost profits are proved with the requisite evidence and precision. *Dahl v. United*

*States,* 695 F.2d 1373, 1382 (Fed.Cir.1982). In denying a motion to dismiss a similar claim, this court has stated that, given a five year farming history, even a nine-year profits loss period may be probable, as long as the plaintiff could establish the foreseeability of damages over such a lengthy time period. *Roberts,* 18 Cl.Ct. at 357.

**92**

litigation. 227 Ct.Cl. at 466–67, 650 F.2d at 269. The appropriate forum for such a request was the district court immediately subsequent to the CPCA litigation.

The gravamen of plaintiff's complaint is that the FmHA's delay in processing her loan occasioned the harm for which she seeks redress. As to the implied-in-fact contract breach claim, plaintiff alleges that this delay breached her agency relationship with the FmHA, as well as contravened FmHA regulations. Plaintiff's reliance on Mr. Jolley's alleged breach would appear to be misplaced: "Unless a ... regulation is money-mandating [or restated as a contractual obligation], the Government creates no legal right enforceable in the Claims Court ... by violating it...." *Nutt v. United States*, 12 Cl.Ct. at 351. The Federal Circuit upheld this court's ruling that "any undue delay by FmHA in making [a] ... loan is vindicable, if at all, only in a tort action of which the Claims Court would have no jurisdiction...." *Smithson v. United States*, 847 F.2d at 795. It would appear that a renewed motion to dismiss challenging the existence of an actionable implied-in-fact contract would be appropriate.[5] Defendant might also obtain a copy of plaintiff's third-party complaint now pending in the United States District Court for the Middle District of Tennessee. This earlier-filed action appears to be a suit on the same claim as the instant suit. *See Johns–Manville Corp. v. United States*, 855 F.2d 1556 (Fed.Cir.1988), *cert. denied*, 489 U.S. 1066, 109 S.Ct. 1342, 103 L.Ed.2d 811 (1989), *aff'g Keene Corp. v. United States*, 12 Cl.Ct. 197, 211–12 (1987) (Claims Court lacks jurisdiction over earlier-filed third-party complaint on same claim).

## CONCLUSION

Based on the foregoing, defendant's motion to dismiss is granted as to plaintiff's claims for damages for lost reputation for credit in the community and for attorneys' fees and costs and otherwise denied without prejudice to its renewal. Unless defendant files a renewed motion by August 31, 1990, trial will be scheduled.

IT IS SO ORDERED.

---

5. The court notes that it may not rule *sua sponte* on this alternative ground. *Cooper v. Ford Motor Co.*, 748 F.2d 677, 680 (Fed.Cir.1984) (court's *sua sponte* holding of patent invalidity and subsequent grant of summary judgment was reversible error); *Thoen v. United States*, 765 F.2d 1110, 1114–15 (Fed.Cir.1985) (court's *sua sponte* conversion of motion to dismiss claims to motion for summary judgment was reversible error if plaintiff had no opportunity to respond).